# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MILUN MILISAVLJEVIC, on behalf of himself and all others similarly situated, | |
| Plaintiff, | No. 19-cv-08449 |
| v. | Judge John F. Kness |
| MIDLAND CREDIT MANAGEMENT, LLC, MIDLAND FUNDING, LLC, and ENCORE CAPITAL GROUP, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Seeking to collect unpaid credit card debt, Defendants Midland Credit Management, Inc., Midland Funding, LLC, and Encore Capital Group, Inc. sued Plaintiff Milun Milisavljevic in a state court. When Defendants filed a motion for default judgment in the state-court litigation, they sent copies of the motion and an unsigned order to Plaintiff. Thinking that the unsigned and undated order meant he had already lost in the state court, Plaintiff declined to respond; accordingly, the state court entered a judgment against him. Only then did Plaintiff retain counsel to assist with his legal woes.

Plaintiff brought this purported class action alleging that Defendants violated the Fair Debt Collection Practices Act (FDCPA). But the injuries Plaintiff alleges—that he "experienced severe emotional distress" and "lost sleep"; was duped into not

responding to Defendants' motion, thus leading to a default state-court judgment; and "spent time, money, and energy in seeking to vacate the judgment once he realized it was entered"—are not sufficient under binding precedent of the Court of Appeals to confer on him standing under Article III of the Constitution. Accordingly, because the Court lacks subject matter jurisdiction, Defendants' motion to dismiss (Dkt. 53) is granted, and Plaintiff's complaint is dismissed without prejudice.

I. **BACKGROUND**

Plaintiff held a credit card account with Citibank, N.A.; Plaintiff used this account "for household purchases such as clothing and groceries." (Dkt. 50 ¶¶ 6-7.) Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC ("Midland") are collection agencies that collect defaulted consumer debts owed to others. (*Id.* ¶¶ 9-10, 15-16.) Defendant Encore Capital Group, Inc. ("Encore") is an "international specialty finance company providing debt recovery solutions and other related services for consumers across a broad range of financial assets." (*Id.* ¶ 20.)

When Plaintiff could not pay the debt on his credit card and defaulted, Defendant Midland purchased the debt and, in March 2019, filed a lawsuit against Plaintiff in the Circuit Court of Cook County, Illinois. (*Id.* ¶¶ 28-30.) (Defendant MCM was also involved in the state-court lawsuit (*see, e.g., id.* at ¶ 39), but it is not clear from the allegations of the complaint when MCM became involved.)

During the state-court litigation, Defendants MCM and Midland filed a motion for default judgment and sent the motion along with a judgment "order" to Plaintiff. (*Id.* ¶ 39-40, 50.) Plaintiff characterizes the "order" as a "False Order," alleging that

2

he believed it "had been originated, drafted and entered by the State Court as opposed to being a communication from one or more of the Defendants, as the False Order did not state it was from a debt collector, and instead read that it was from 'Judge of the Circuit Court.'" (*Id.* ¶ 53.)[1] According to Plaintiff, "MCM and Midland regularly present draft orders of judgment to the Illinois Courts that are different than those they send to consumers in connection with the motions of default judgments that they file in collection cases." (*Id.* ¶ 66.)

Thinking he had lost the case, Plaintiff "experienced severe emotional distress" and "lost sleep." (*Id.* ¶¶ 57-58.) Plaintiff—believing he had already lost the state-court case—"did not respond to the Motion"; accordingly, the state court entered judgment against Plaintiff. (*Id.* ¶¶ 61-62.) Only after that judgment was entered did "Plaintiff hire[] an attorney to seek to vacate the judgment, and spen[d] time, money, and energy in seeking to vacate the judgment." (*Id.* ¶ 73.)

In December 2019, Plaintiff brought this suit against the three Defendants,[2] purportedly on behalf of all individuals similarly situated (*id.* ¶¶ 79-88), alleging the Defendants' conduct in the state-court litigation amounted to violations of the Fair Debt Collection Practices Act (FDCPA) (*id.* ¶¶ 89-93). Defendants moved to compel arbitration in June 2020 (Dkt. 23), and Plaintiff filed an amended complaint in

---

[1] Attached to the amended complaint, Exhibit B includes, among other things, (1) a "Notice of Motion" announcing the filing of Defendants' motion for default judgment; (2) a motion for default judgment; and (3) an unsigned and undated "Order" granting the motion for default judgment. (Dkt. 50 at 34-47.)

[2] Plaintiff alleges that Defendant Encore "bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Midlands and MCM." (Dkt. 1 ¶ 76.)

August 2021 (Dkt. 50). Defendants then filed the present motion to dismiss, arguing, among other things, that Plaintiff lacks standing. (Dkt. 53.)

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, — F.4th —, No. 21-1616, 2022 WL 168260 at *3 (7th Cir. Jan. 19, 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678-79.

## III. DISCUSSION

As has been long recognized, the United States Constitution "confers limited authority on each branch of the Federal Government." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). One of the limitations placed on federal courts is that "[t]he judicial Power" extends only to "Cases" and "Controversies." U.S. Const. art III, § 2;

*see Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies") (citation omitted)).

To satisfy the case-or-controversy requirement, a party seeking to invoke a federal court's jurisdiction must establish that it has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, the plaintiff must allege: "(1) the plaintiff suffered a concrete and particularized injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (citing *Lujan*, 504 U.S. at 560-61).

At an accelerated pace, the Seventh Circuit has addressed standing under the FDCPA on numerous recent occasions. *See, e.g.*, *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Markakos v. Medicredit, Inc.*, No. 20-2351, 2021 WL 1937267 (7th Cir. May 14, 2021); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020). In shorthand, the net effect of these rulings has been to narrow the range of alleged harms that can, at the pleading stage, demonstrate that a plaintiff has standing to proceed under the FDCPA.

Under the FDCPA, as with every other remedial statutory scheme, Congress "must remain within the bounds of Article III in creating causes of action for intangible injuries, and even when it does, not every statutory violation implicates an interest that Congress sought to protect." *Wadsworth*, 12 F.4th at 667. An alleged procedural violation of the FDCPA "may amount to a concrete injury, but only if it impairs the plaintiff's ability to use that information for a substantive purpose that the statute envisioned." *Bazile*, 983 F.3d at 280 (cleaned up).

At the pleading stage, "the standing inquiry asks whether the complaint clearly alleges facts demonstrating each element in the doctrinal test." *Larkin*, 982 F.3d at 1064 (cleaned up).[3] To establish injury in fact—one of the elements of standing—a plaintiff must show that he or she suffered " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at 339 (quoting *Lujan,* 504 U.S., at 560).

### A. Plaintiff's General Standing Allegations

Plaintiff's alleged injuries are insufficient to confer standing in this case. As an initial matter, Plaintiff's recitation of the standing requirements in the "Standing" section of his complaint is inadequate. Plaintiff alleges that "Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision." (Dkt. 50 ¶ 3.) Then, he alleges "[s]pecifically" that he has

---

[3] Plaintiff "must establish standing at the time [the] suit is filed and cannot manufacture standing afterwards." *Pollack v. U.S. DOJ*, 577 F.3d 736, 742 n.2 (7th Cir. 2009) (citing *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 180 (2000)).

6

"suffered a harm from receiving false, misleading, unfair, oppressive, and deceptive communications from Defendants while they were attempting to collect a debt from him," and thus "suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court." (*Id.* ¶¶ 4-5.)

But a mere recitation of the standing requirements is not enough. *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (explaining that a complaint is insufficient "if it tenders 'naked assertions' devoid of 'further factual enhancement'" (quoting *Iqbal*, 556 U.S. at 679). As to what Plaintiff characterizes as being more "specific[]" (Dkt. 50 ¶ 4), nothing in that paragraph amounts to "an invasion of a legally protected interest" sufficient to confer standing. *Spokeo*, 578 U.S. at 339 (citation omitted).

### B. Plaintiff's Specific Standing Allegations

Later in the complaint, Plaintiff alleges three potential injuries in fact: (1) because of Defendants' conduct, Plaintiff "experienced severe emotional distress" and "lost sleep"; (2) "did not respond to the [state-court] Motion," which led to the state court entering default judgment against him; and (3) "hired an attorney to seek to vacate the judgment, and spent time, money, and energy in seeking to vacate the judgment once he realized it was entered." (Dkt. 50 ¶¶ 57-58, 61-62.) For the reasons that follow, those injuries are insufficient as well to establish standing.

First, emotional injuries—such as a "sense of indignation" or "aggravated annoyance"—are not enough to confer standing under the FDCPA. *Gunn v. Thrasher,*

7

*Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020). The Seventh Circuit recently reiterated that

> it is hard to imagine that anyone would file any lawsuit without being annoyed (or worse). Litigation is costly for both the pocketbook and peace of mind. Few people litigate for fun. Yet the Supreme Court has never thought that having one's nose out of joint and one's dander up creates a case or controversy.

*Id.* at 1072; *see United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015). For the same reasons, "sleep deprivation caused by worry alone cannot establish standing." *Choice v. Unifund CCR, LLC*, No. 19-CV-5773, 2021 WL 2399984, at *2 (N.D. Ill. June 11, 2021).[4] Accordingly, Plaintiff's first alleged injury does not confer standing.

Plaintiff's second alleged injury is more complex in terms of assessing standing under the evolving precedents of the Court of Appeals. Plaintiff alleges, in effect, that the materials Defendants sent him—specifically the motion for default judgment and Order ("False Order")—led him not to respond to the motion or otherwise engage in the state-court litigation, which resulted in the default judgment against him. (Dkt. 50 ¶ 62.) Plaintiff explains that he "would have responded to the Motion had he known that judgment had not already been entered, and [he] only failed to respond due to his false belief—induced by Defendants' communications including the False Order—that judgment had already been entered." (*Id.* ¶ 63.) The "injury"—if any—

---

[4] Plaintiff's citations to out-of-circuit cases finding that "injuries" such as loss of sleep or stress could confer standing (*see* Dkt. 64 at 11-12) do not salvage his position. This Court is bound by the Seventh Circuit, which has rejected such bases for standing under the FDCPA.

8

therefore is not Plaintiff's self-described "inaction" (Dkt. 64 at 10); it is the judgment that was entered against Plaintiff in the state-court case (Dkt. 50 ¶ 62).

The extent of Plaintiff's second alleged injury (if any) is complicated by Plaintiff's own efforts—described in the complaint—to vacate the state-court judgment. (*See* Dkt. 50 ¶ 73.)[5] Even drawing all reasonable inferences in the plaintiff's favor, *see Iqbal*, 556 U.S. at 678, the complaint does not allege that the *default judgment*—as distinct from the *efforts taken to vacate* that judgment, which are discussed separately below—is an "actual or imminent, not conjectural or hypothetical" injury in light of Plaintiff's (perhaps ongoing) efforts to vacate that judgment, *Spokeo*, 578 U.S. at 339 (citation omitted).

Citing to *Smith v. GC Servs. Ltd. P'ship.*, 986 F.3d 708, 710 (7th Cir. 2021), Plaintiff argues that he has taken a "detrimental step" such that he has standing. (Dkt. 64 at 11.) In *Smith*, the Seventh Circuit held that a plaintiff lacked standing where the plaintiff "sa[id] that she was confused by the letter she received, [but did] not contend that the letter's supposed lack of clarity led her to take any detrimental step, such as paying money she did not owe." *Smith*, 986 F.3d at 710. Even assuming Plaintiff's *in*action—in his words, "that he did not seek to defend against the Motion

---

[5] There is some dispute about the extent of Plaintiff's efforts. According to Defendants, as of August 19, 2021 (well after commencement of this lawsuit), "Plaintiff ha[d] not sought to vacate the [state-court] judgment." (Dkt. 51 at 9.) In his Response (filed on October 19), Plaintiff asserts, to the contrary, that he "hired counsel to vacate the judgment soon after the judgment was entered, but due to the fact that he has been out of the country, in combination with the effects of the COVID-19 crisis, a motion to vacate was not filed by his attorneys . . . until recently." (Dkt. 64 at 4.) Regardless of when, and to what extent, Plaintiff sought to vacate the judgment, the allegations in Plaintiff's amended complaint—that he is seeking to vacate the judgment (Dkt. 50 ¶ 73)—undermine his assertion of standing in this litigation.

since he believed that judgment had already been entered" (Dkt. 64 at 11)—can constitute an affirmative "step," *Smith* does not support Plaintiff's standing. Plaintiff nowhere alleges that he has "pa[id] money []he did not owe." *Smith*, 986 F.3d at 710. In fact, Plaintiff's ongoing efforts to vacate the default judgment (Dkt. 50 ¶ 73) undermine his contention that his inaction was "detrimental." *See* Detrimental, Oxford English Dictionary (2021) (defining "Detrimental" as "[c]ausing loss or damage"). Plaintiff thus acknowledges that he is taking steps to avoid the type of harm the *Smith* court hinted might confer standing.[6]

Plaintiff also cites (Dkt. 64 at 11) to *Brown v. Weltman, Weignberg & Reis Co.*, in which the court concluded that a plaintiff had standing where she "allege[d] an actual economic detriment caused by her receipt of [the defendant's] allegedly misleading collection letter." No. 21 C 1120, 2021 WL 3910748, at *2 (N.D. Ill. Sept. 1, 2021). In *Brown*, the plaintiff alleged "that she had to take time away from her self-employment work to scour her records to attempt to get to the bottom of the claims about her debt" and that, "if the letter had said that the debt was too old to sue or report on, she would have simply discarded it, . . . [and] would not have spent any of her self-employment work time investigating." *Id.* But, again, Plaintiff does not allege any "economic harm," *id.*, other than the costs he is now incurring to meliorate his

---

[6] Plaintiff's allegations raise separate questions about whether his injury is "fairly traceable to the challenged conduct." *Bazile*, 983 F.3d at 278 (citation omitted). Even assuming that the default judgment entered against him is a cognizable injury, the default judgment resulted most immediately from Plaintiff's inaction, not Defendant's practices. Plaintiff concedes this point: the complaint alleges that "[j]udgment was entered as a result of Plaintiff's inaction." (Dkt. 50 ¶ 62.) Although he adds that his "inaction" was, in turn, "due to Defendants' false, misleading and deceptive communications," Plaintiff's role in the causal chain leading to the default judgment cannot be ignored.

10

state-court woes. Plaintiff, unlike the plaintiff in *Brown*, does not allege that he expended time that would have otherwise gone to gainful employment (let alone "self-employment") such that he has suffered any harm independent of that associated with "seeking to vacate the [default] judgment." (Dkt. 50 ¶ 73.)

Having failed to demonstrate standing based on his state litigation-related allegations, Plaintiff's final asserted injury is that he hired a lawyer and "spent time, money, and energy in seeking to vacate the judgment." (Dkt. 50 ¶ 73.) But as with his first two categories of alleged injuries, these allegations also fail to confer Article III standing. As the Seventh Circuit recently explained, hiring a lawyer is not a cognizable injury:

> Even innocuous statements about tax law may lead people to consult counsel. . . . A desire to obtain legal advice is not a reason for universal standing. . . . The plaintiffs in *Thole*, *Spokeo*, *Hein*, and *Richardson* all had counsel. They had been concerned, confused, disturbed, or upset enough to ask lawyers for help. But the Supreme Court held that only people who can show personal, concrete injuries may litigate. Many people think that an advisory opinion will set their minds at ease, but hiring a lawyer in quest of a judicial answer does not permit a federal court, operating under Article III, to give that answer.

*Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020). Based on this precedent, even if Plaintiff's decision to hire a lawyer is "fairly traceable to challenged" violation of the FDCPA,[7] *Spuhler*, 983 F.3d at 285, the time, money, and

---

[7] Again, the parties dispute whether Plaintiff would have acted differently "had he known the default order had not yet been entered when he was served with the Motion for Default." (Dkt. 51 at 9.) Defendants argue, in effect, that Plaintiff's neglect (rather than confusion) resulted in the default judgment. (*See id.* ("Plaintiff's claim is implausible because it was his failure to act for over 6 months after having been served with the state court complaint and summons—which he admits he received and read—that led to the default.").) Plaintiff suggests that travel and "the COVID-19 crisis" led to the delays in seeking vacatur of the default judgment. (Dkt. 64 at 4.)

11

energy he has spent hiring a lawyer and working to vacate the state-court judgment are not injuries sufficient to confer standing.

Because Plaintiff has not alleged an "injury in fact . . . that is fairly traceable to the challenged conduct of the defendant, and . . . that is likely to be redressed by a favorable judicial decision," *Wadsworth*, 12 F.4th at 667 (quoting *Spokeo*, 136 S. Ct. at 1547), he lacks standing. Accordingly, the Court does not have jurisdiction over this case.

## IV. CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. 53) is granted, and the case is dismissed without prejudice.[8] Defendants' motion to compel arbitration (Dkt. 23) is dismissed as moot.

SO ORDERED in No. 19-cv-08449.

Date: January 24, 2022

_____
JOHN F. KNESS
United States District Judge

---

[8] The Seventh Circuit has explained that, if a complaint "fails to include enough allegations to support Article III standing for the plaintiffs, the court has only two options: it can either dismiss the complaint with leave to amend, or it can dismiss the case for want of jurisdiction and hence without prejudice." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). Having ruled that Plaintiff lacks standing, and because Plaintiff has already amended his complaint (Dkt. 50), dismissal without prejudice is warranted in this case. *See MAO-MSO Recovery*, 935 F.3d at 582 (district court did not abuse its discretion when it dismissed case "on standing grounds and . . . refuse[d] further amendments").